**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LUZ EVELYN MALDONADO, | ) | CASE NO. 1:20-cv-01120 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Luz Evelyn Maldonado (hereinafter "Plaintiff"), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (hereinafter "Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

**I. Procedural History**

On February 22, 2016, Plaintiff filed her application for SSI, alleging a disability onset date

of May 10, 2014. (R. 11, Transcript ("Tr.") 983-985, 998). Plaintiff subsequently moved to amend the alleged onset date (AOD) to February 10, 2016. (Tr. 998). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 906-925). Plaintiff participated in the hearing on May 8, 2018, was represented by counsel, and testified through an interpreter. (Tr. 32-70). A vocational expert ("VE") also participated and testified. *Id*. On March 6, 2019, the ALJ found Plaintiff not disabled. (Tr. 24). On March 25, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-9). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13, 14 & 15).

Plaintiff asserts the following assignment of error: the ALJ violated the treating physician rule when weighing the medical opinion of Peter Ngo, M.D. (R. 13, PageID# 2025).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

A few days before the alleged onset date, on February 2, 2016, Plaintiff saw board certified family nurse practitioner Lauren Lasko. (Tr. 1171). She was negative for depression and not nervous or anxious. *Id*.

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised. Although the court appreciates the parties' attempts to streamline their briefs, the recitation of the medical evidence of record was too superficial. While Plaintiff's argument revolves entirely around the weight ascribed to the opinion of Peter Ngo, M.D., Plaintiff's brief fails to adequately set forth the course of Dr. Ngo's treatment or Plaintiff's treatment for her mental health impairments.

On May 9, 2016, Plaintiff saw Michelle Filanovsky, M.D. (Tr. 1217). Plaintiff reported she was overall anxious/sad regarding her medical problems and family issues, but it does not interfere with her daily activities. *Id*. She reported wanting to see a psychiatrist. *Id*.

On May 23, 2016, Yael Mauer, M.D. authored a "to whom it may concern" letter noting that Ms. Maldonado "is my patient. She suffers from Depression/anxiety[,] Diabetes type II[,] Hypothyroidism[,] GERD[, and] Cranial Mass of Undetermined Etiology[.]" (Tr. 1212). During a June 1, 2016 telephone call, Plaintiff requested a letter from Yael Mauer, M.D., that she is unable to work due to her medical conditions. (Tr. 1214; Exh. B11F). Plaintiff had been prescribed Zoloft on May 3, 2016 for depression, but she had not been taking it. (Tr. 1214, 1216, 1224). She indicated she would start doing so the following day. (Tr. 1214). Dr. Mauer noted that Plaintiff was able to care for herself and continue her daily activities. *Id*. Dr. Mauer explained that Plaintiff's CTH (computed tomography head) findings were not malignant and no follow up was needed. *Id*. Dr. Mauer explained to Plaintiff that "she does not have any medical conditions that will preclude her from working." *Id*. Plaintiff reported that it was her social situation, such as caring for her children, which made it difficult to work. *Id*.

On August 14, 2017, Plaintiff was seen by internal medicine resident Peter Ngo, M.D., as a new patient. (Tr. 1423). He noted Plaintiff has a history of hypertension, Type 2 diabetes mellitus, hypothyroidism, GERD, chronic idiopathic urticaria (hives), allergies, chronic constipation, and iron deficiency secondary to heavy menses. *Id*. Plaintiff reported returning to Cleveland from Puerto Rico in December of 2016. (Tr. 1425). She stated she had been on disability in Puerto Rico for depression and anxiety, and was seeking a letter from another doctor to qualify her for social security. *Id*. She stated she was unable to see a psychiatrist in the Cleveland area and had been taking Xanax while in Puerto Rico. *Id*. Upon review of symptoms,

anxiety and depression were noted. (Tr. 1427). Treatment notes contained a physical examination, but no mental status examination. (Tr. 1423-1429). Plaintiff was referred to psychiatry for reported anxiety. (Tr. 1428). Teaching and supervising physician Hallie K. Dechant, M.D., also examined the patient and agreed with the resident's treatment plan and notes. (Tr. 1429).

On September 15, 2017, Plaintiff saw supervising physician Douglas Einstadter, M.D., along with resident Dr. Ngo. (Tr. 1872-1876). Plaintiff was assessed with Type 2 diabetes mellitus, essential hypertension, and nasal polyp. (Tr. 1873-1874). There was no discussion of Plaintiff's mental health impairments, and it appears no mental health treatment occurred. *Id*.

On November 29, 2017, Plaintiff again saw resident Dr. Ngo. (Tr. 1504). Plaintiff reported left ear and head pain. *Id*. Plaintiff recently had surgery for "adenocarcinoma…found on screening colonoscopy." (Tr. 1505). Treatment notes contained a physical examination, but no mental status examination. (Tr. 1507-1508). Dr. Ngo diagnosed rectosigmoid cancer, and nasal polyp. (Tr. 1507). Plaintiff also saw teaching and supervising physician Alan Klinkhachorn, M.D., who agreed with the resident's decisions making. (Tr. 1508).

On March 9, 2018, Plaintiff saw resident Dr. Ngo and teaching physician Michelle Kampfner, M.D. (Tr. 1941). Plaintiff reported recently starting chemotherapy for colon cancer. (Tr. 1941-1942). Dr. Ngo assessed essential hypertension, Type 2 diabetes, hypothyroidism, nasal polyp, and dysuria. (Tr. 1943-1944). The visit did not discuss or address any mental health issues. (Tr. 1941-1944).

2. **Medical Opinions Concerning Plaintiff's Functional Limitations**

On April 13, 2018, Dr. Ngo completed a one-page checkbox style "Off-Task/Absenteeism Questionnaire." (T. 1949). Dr. Ngo checked a box indicating that Plaintiff likely would be off-

4

task at least 20% of the time (exclusive of a 30 minute lunch break and two 15 minute breaks). *Id*. Dr. Ngo offered the following diagnoses why Plaintiff would be off-task: severe anxiety, depression, panic attacks, and PTSD. *Id*. Dr. Ngo checked a box indicating Plaintiff's impairments would cause an inability to concentrate, pay attention and/or focus on a sustained basis. *Id*. Dr. Ngo stated a side effect of Clonazepam is drowsiness. *Id*. Dr. Ngo checked a box indicating that he anticipated Plaintiff's impairments or treatment would cause about four absences from work per month. *Id*. Finally, Dr. Ngo checked a box indicating Plaintiff's severity of limitations have existed since at least May of 2014—nearly four years before the opinion was rendered and over three years before Dr. Ngo first encountered Plaintiff. *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c)

5

and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since February 10, 2016, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: rectosigmoid adenocarcinoma, status post resection, in remission; depressive disorder; and anxiety disorder (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work, as defined in 20 CFR 416.967(c), except she is further limited to simple, routine tasks with no strict time demands, no strict product quotas, no more than simple work instructions and decisions, and no more than minimal or infrequent changes in the work setting; and she is limited to no direct work-related interaction with the public, occasional interaction

with supervisors, and occasional and superficial interaction with coworkers.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on ***, 1967 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 10, 2016, the date the application was filed (20 CFR 416.920(g)).

(Tr. 18-20, 22-23).

## V. Law and Analysis

**A. Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.

7

*Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

In her sole assignment of error, Plaintiff asserts the ALJ violated the treating physician rule when considering Dr. Ngo's opinion as rendered in a questionnaire dated April 13, 2018. Although the court finds that the treating physician rule is not implicated by the opinion of Dr. Ngo, as explained in greater detail below, the court finds the ALJ set forth sufficiently good reasons for affording such opinion no weight, given the particular facts of this case.

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons that are "sufficiently specific to make

clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established, however, that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009).

The ALJ addressed Dr. Ngo's opinion as follows:

> The undersigned accords no weight to the treating source statement of Peter Ngo, M.D., that the claimant would be off task four times per month and at least 20% of each day because of severe anxiety and depression and drowsiness from

9

>medication (exh. B24F p.2). Dr. Ngo's opinion is not consistent with treatment records or the observations of Yael Mauer, M.D. (exh. B11F, B24F). Dr. Mauer informed the claimant that she does not have a medical condition that precludes her from working (exh. B11F p.2).

(Tr. 22).

The decision gave sufficiently good reasons for rejecting Dr. Ngo's opinion. The ALJ's statement that Dr. Ngo's opinion, based entirely on Plaintiff's mental health conditions, was not consistent with treatment records constitutes a good reason for rejecting the provider's opinion under the facts of this case. First, as pointed out by the ALJ, Dr. Mauer, who was clearly aware of Plaintiff's mental health impairments, expressly stated that Plaintiff "does not have any medical conditions that will preclude her from working." (Tr. 1214; Exh. B11F). In addition, the ALJ found that "Dr. Ngo's opinion is not consistent with treatment records…." (Tr. 22). Plaintiff has not identified a single mental health treatment record that calls into question the accuracy of this conclusion, and provided a superficial discussion of Plaintiff's medical record that does not support a different outcome. The court's review of the record and the recitation of Dr. Ngo's course of treatment with Plaintiff, as set forth in the relevant medical evidence *supra*, does not indicate that Dr. Ngo ever treated Plaintiff's mental health issues. Rather, it appears from the record that the closest the provider has come to treating Plaintiff for her mental health issues is referring her to a psychiatrist. (Tr. 1428). The remaining medical records involving Dr. Ngo that this court has uncovered do not document mental health treatment. Plaintiff has not identified any contrary evidence. To the extent a treatment note exists in the nearly 2000-page record that documents actual mental health treatment by Dr. Ngo, the burden of proof remains with the Plaintiff to identify such evidence. The court cannot scour the record to uncover evidence supporting Plaintiff's argument without improperly assuming the role of advocate.

Furthermore, assuming *arguendo* any error in the ALJ's level of articulation for rejecting Dr. Ngo's opinion, numerous decisions have found that the use of checklist or check-the-box forms that contain little to no accompanying explanation for the assessed limitations—even when utilized by a treating physician or acceptable medical source—are unsupported opinions and, therefore, an ALJ may properly reject source opinions contained in such forms.[2] One Sixth Circuit decision went even further and determined that a check-box opinion, unaccompanied by any explanation, is "'weak evidence at best' and meets our patently deficient standard." *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 475 (6th Cir. 2016) (*citing Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 551 (6th Cir. 2010)).[3]

The *Hernandez* decision explained that "[e]ven if the ALJ erred in failing to give good

---

[2] *See, e.g., Kepke v. Comm'r of Soc. Sec.*, No. 15-1315, 636 Fed. App'x 625, 2016 WL 124140, at *4 (6th Cir. Jan. 12, 2016) ("Dr. Chapman's checklist opinion did not provide an explanation for his findings; therefore, the ALJ properly discounted it on these grounds."); *accord Langlois v. Colvin*, No. 3:15-CV-01682, 2016 WL 1752853, at *8 (N.D. Ohio May 3, 2016) (Vecchiarelli, M.J.) (finding the ALJ did not err by rejecting a treating source's unexplained checklist opinion); *see also Hyson v. Comm'r of Soc. Sec.*, No. 5:12CV1831, 2013 WL 2456378, at *14 (N.D. Ohio June 5, 2013) (Burke, M.J.) (finding that because Dr. Martinez merely checked the boxes on the form while leaving those sections of the form blank where she was to provide her written explanation, she failed to provide any substantive basis for her conclusions and the ALJ was not required to accept her opinions); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("We have held that the ALJ may 'permissibly reject[] ... check-off reports that [do] not contain any explanation of the bases of their conclusions.'") (citations omitted); *Smith v. Astrue*, 359 Fed. App'x 313, 316 (3d Cir. 2009) ("checklist forms ... which require only that the completing physician 'check a box or fill in a blank,' rather than provide a substantive basis for the conclusions stated, are considered 'weak evidence at best' in the context of a disability analysis.") (citations omitted); *cf. Price v. Comm'r SSA*, 342 Fed. App'x 172, 176 (6th Cir. 2009) ("Because Dr. Ashbaugh failed to identify objective medical findings to support his opinion regarding [claimant's] impairments, the ALJ did not err in discounting his opinion.")

[3] The *Friend* decision identified three instances where a violation of the treating physician rule would be harmless error. 375 Fed. App'x at 551. The first instance, found applicable by the *Hernandez* court, was where "a treating source's opinion is so *patently deficient* that the Commissioner could not possibly credit it." *Id.* (emphasis added).

11

reasons for not abiding by the treating physician rule, it was harmless error" where the opinion in question was an unsupported check-box opinion. *Id.*; *accord Shepard v. Comm'r of Soc. Sec.*, No. 17-1237, 2017 WL 4251707, at *4 (6th Cir. Sept. 26, 2017) (finding that a doctor's "conclusory opinion, which provided no supporting findings or records and consisted largely of one word answers, circles, and check-marks" was suspect under *Hernandez*); *Toll v. Comm'r of Soc. Sec.*, No. 1:16cv705, 2017 WL 1017821 at *4 (W.D. Mich. Mar. 16, 2017) (finding that "even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis); *Denham v. Comm'r of Soc. Sec.*, No. 2:15cv2425, 2016 WL 4500713, at *3 (S.D. Ohio Aug. 29, 2016) ("The magistrate judge also correctly found that any error in the ALJ's consideration of Lewis's evaluation was harmless because the check-box form was so patently deficient that the Commissioner could not possibly credit it," and observing that "[t]he Sixth Circuit has cast doubt on the usefulness of check-box forms where the physician fails to give any explanation for his findings.").[4] *cf. Herzog v. Comm'r of Soc. Sec.*, No. 2:16-CV-244, 2017 WL 4296310, at *3 (S.D. Ohio Sept. 28, 2017) (disagreeing with a report and recommendation which determined it was error for an ALJ to reject an opinion because it was given on a check-the-box, preprinted form—noting that while "there is no *per se* rule regarding this type of evidence, the Sixth Circuit has cast doubt on the usefulness of check-box forms where the physician fails to give any explanation for his or her findings.")

---

4 Moreover, another court aptly noted that a medical source statement, which was in a "check-box format," was "an impotent addition to the record with little to no persuasive value," and it was "immaterial" if there was certain evidence in the record consistent with the opinion "because the ALJ provided 'good reasons' for discounting his opinion and this Court may not reweigh the evidence." *Jackson v. Comm'r of Soc. Sec.*, No. 1:16-CV-14404, 2017 WL 4699721 at *7 (E.D. Mich. Oct. 19, 2017).

Dr. Ngo's checklist/checkbox opinion, containing minimal articulation supporting the limitations assessed, echoes those disfavored in the above cited cases. As set forth in the recitation of the medical evidence, *supra*, the form completed by Dr. Ngo contains only checked limitations and a list of mental health diagnoses. (Tr. 1949). The recitation of the relevant medical evidence at the outset of this report and recommendations does not even indicate that Dr. Ngo ever treated Plaintiff's mental health impairments. Given the minimal explanation accompanying the alleged listed restrictions, the court concludes, even assuming for the sake of argument only that the ALJ failed to give "good reasons" for rejecting the opinion, that any omission is harmless error.

Finally, as alluded to above, the record does not support the conclusion that Dr. Ngo constituted a treating source at the time the disputed opinion was rendered. As stated above, the parties' briefs do not adequately set forth the course of treatment rendered by Dr. Ngo in their recitation of the medical record. Plaintiff especially neglected to point out that Dr. Ngo was a *resident* who was supervised by another physician at *every* treatment encounter. The medical records are unambiguous, and it is clear on their face that Dr. Ngo was a resident and treated Plaintiff solely under the supervision of a licensed physician. The medical treatment records naturally beg the question of whether Dr. Ngo was licensed to practice medicine in the State of Ohio when his opinion was rendered, and whether a resident qualifies as a "treating source" as defined by the regulations. Thus, while the parties have not raised this issue, the court cannot blindly overlook an indisputable fact and ignore its potential impact on the sole assignment of error raised; and consequently, provides this alternative reason for finding Plaintiff's sole assignment of error lacks merit.

Pursuant to the regulations governing claims filed before March 27, 2017, "[m]edical

opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1) & 416.927(a)(1). In other words, in order to be considered a "medical opinion," a statement must come from an "acceptable medical source." Furthermore, only an "acceptable medical source can qualify as a "treating source." 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2). To clarify any ambiguity in the regulations, Social Security Ruling ("SSR") 06-03p states as follows: "only 'acceptable medical sources' can give us medical opinions…. [and] **only 'acceptable medical sources' can be considered treating sources** …." SSR 06-03p, 2006 WL 2329939 at *2 (emphasis added) (citations omitted). An "acceptable medical source" is defined by the regulations as follows:

> (1) *Licensed* physicians (medical or osteopathic doctors);
>
> (2) Licensed psychologist ….
>
> ***
>
> (3) Licensed optometrist for impairments of visual disorders ….
>
> (4) Licensed podiatrist for impairments of the foot, or foot and ankle only ….
>
> [or]
>
> (5) Qualified speech-language pathologist for speech or language impairments only….

20 C.F.R. §§ 404.1502(a) and 416.902(a) (emphasis added).

At the time Dr. Ngo rendered his opinion on April 13, 2018, he had a "Training Certificate (MD)" from the State Medical Board of Ohio that was issued on September 11, 2015 and became effective on July 1, 2017. Dr. Ngo did ultimately receive a "Doctor of Medicine (MD)"

license with an issue date of May 9, 2018, and an effective date of February 4, 2020.[5] Thus, Dr. Ngo's questionnaire and treatment all pre-date the issuance of his MD license. Training certificates, such as the one possessed by Dr. Ngo when he completed the disputed questionnaire, expressly contain the following practice limitations:

- Acknowledgment letters and training certificates allow you to perform such acts as may be prescribed by or incidental to your internship, residency or clinical fellowship program.

- You are ***not entitled to otherwise engage in the practice of medicine and surgery or osteopathic medicine and surgery in this state***.

- You must limit activities under the acknowledgement letter and training certificate to the programs of the hospitals or facilities for which the training certificate is issued.

- ***You may train only under the supervision of the physicians*** responsible for supervision as part of the training program.

*See* http://www.med.ohio.gov/Apply/Training-Certificate-MD-DO-DPM#PracticeLimits (last accessed April 29, 2021) (emphasis added).

Because Dr. Ngo had only a training certificate, and was not a "licensed physician" (*i.e.* medical doctor or doctor of osteopathic medicine) on the date he completed the questionnaire, he was not an "acceptable medical source" when he authored the opinion. If he was not an acceptable medical source, he also cannot be considered a treating source under the authority cited above. This determination is consistent with prior decisions of this Court. *See, e.g. Thurman v. Comm'r of Soc. Sec.*, No. 1:12-CV-2034, 2013 WL 2358579, at *6 (N.D. Ohio May 29, 2013) (finding that because Dr. Ibrahim "had a training certificate, he was not a 'licensed physician' under the regulations" and could only be considered an "other" medical source);

---

[5] *See* https://elicense.ohio.gov/oh_verifylicense (last accessed April 29, 2021).

*accord Honaker v. Colvin*, No. 1:14-CV-2487, 2015 WL 5559888, at *7 (N.D. Ohio Sept. 21, 2015) (agreeing with *Thurman* and finding Dr. Awwad was not a "licensed physician" because he possessed only an MD Training Certificate and, therefore, his opinion was not subject to the treating physician rule).

Consequently, the treating physician rule is simply inapplicable to Dr. Ngo's opinion. At most, Dr. Ngo could be construed as an "other source" or a "medical source" who is, nevertheless, not an "acceptable medical source." 20 C.F.R. §§ 404.1502(d) & 416.902(i); 20 C.F.R. §§ 404.1527(f) & 416.927(f) ("The adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.") SSR 06-3p recognizes that the presence of these medical sources who do not constitute "acceptable medical sources" and categorizes them as "other sources." SSR 06-3p, 2006 WL 2329939 at *2.

Nevertheless, SSR 06-3p cautions that the opinions of "other sources," such as Dr. Ngo, should be considered:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-3p, 2006 WL 2329939 at *6. Here, the ALJ's explanation for rejecting Dr. Ngo's opinion, quoted earlier, also plainly satisfies the less stringent explanation requirement that the opinion of an "other source" be considered. Therefore, the ALJ carried out the duty to consider and generally explain the evidence from an "other source." To require greater articulation or to

require that the ALJ give "good reasons" for rejecting the opinion of an "other source" would impermissibly extend the scope of the treating physician rule.

Therefore, as explained *supra* the court finds Plaintiff's sole assignment of error is without merit.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: July 26, 2021

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.** *See Berkshire v. Beauvais,* **928 F. 3d 520, 530-31 (6th Cir. 2019).**